Excellent. Well, the people from your program have done well in the past and I'm sure Mr. Harris will continue the tradition. May it please the court. My name is Clint Harris and I represent the appellant Jesus Pineda Ramirez in today's appeal. In North Carolina in 2006, Mr. Pineda Ramirez pled guilty to two counts of intercourse with certain victims. Thereafter, he was subjected to an expedited removal proceeding because a DHS official determined that he had been convicted of an aggravated felony. In 2008, Mr. Pineda Ramirez was removed to Mexico pursuant to a final administrative removal order issued again by a DHS official. In 2018, Mr. Pineda Ramirez was indicted in the Southern District of Iowa for violation of 1326 for illegal reentry after being removed. Pre-trial, he moved to dismiss the indictment by raising a collateral attack against the removal order. The district court denied the motion finding that quote, there's no reasonable likelihood that an immigration judge would have granted voluntary departure and therefore he could not have suffered any prejudice. There are two issues we would like to discuss today, prejudice and aggravated felony classification. I would actually like to start with the issue that both parties have labeled as part two, the aggravated felony classification. In 2017, the Supreme Court in Esquivel-Cantana v. Sessions held that 16 is the maximum age of the victim for a state statutory rape crime to qualify as an aggravated felony, leaving open the question of the age of minority for statutory rape with a special relationship. However, this appeal is a direct extension of that holding, and this court should hold that the North Carolina state crime that Mr. Pineda Ramirez was convicted of, sexual penetration by a substitute parent of a person under 18 is categorically overbroad to fall within the INA's generic sexual abuse of a minor for three reasons. First, turning to the state statutes and federal statutes in effect in 1996. Second, looking to the model penal code. And then lastly, looking to the INA and the surrounding provisions of sexual abuse of a minor. These three sources are what the Supreme Court relied on in Esquivel-Cantana to establish the context that Congress was operating in when it added the language sexual abuse of a minor. And looking to the statutes first, 10 states set the age of minor as 16 or younger for crimes involving special relationships. But that's not to imply that the other 40 states cut the other way and that they criminalized conduct for individuals over the age of 16. And in fact, a total of 29 states in 1996 would have found that the statutory age was 16 or under, even with a special relationship. And 29 is negligibly close to 31, which Esquivel-Cantana found to be compelling when it was evaluating state statutes in Esquivel-Cantana. Where in your brief would I find the listing of the 29? Your Honor, that is not in the brief in preparation for the oral arguments. That's what I thought. This is the big issue in the case and neither side has gone through the Esquivel-Cantana analysis. Yes, Your Honor.  Yes, Your Honor. You did it in preparation for oral argument. That's not the right time to do it. No, Your Honor. I'm happy to provide to the court a Rule 28J letter with the chart and explaining the reasoning behind it. Well, that would be up to the panel. I mean, we'd have to let the government brief that as well. Yes, Your Honor. It seems like we need to go through a detailed inquiry to more than what the briefs do on barely scratching the surface, it seemed to me. Do you agree with that? The briefs don't really have an adequate inquiry into the... Your Honor, we agree that the methodology employed by Esquivel-Cantana is the appropriate methodology and that following that methodology of looking to state statutes at the time as well as other bodies of law in effect in 1996 would lead to a conclusion that it is the age of 16 that is the age of minority even in a situation where there's a special relationship. So, yes, Your Honor. And looking to those states, again, it would be a total of 29 that would either have criminalized the conduct in 1996 or they did not have a specific law on the books and therefore conduct involving a special relationship would have fallen underneath the generic statutory rape crime per that state. And again, looking to the model penal code, or excuse me, I'd like to back up briefly to the federal statutes that are also at play. And in 1996, along with the amendments to the INA and that same omnibus bill, Congress added the language to 2243A of sexual abuse of a minor and there the federal government used the age of 16 when discussing sexual intercourse with a minor. And that's the only time that sexual abuse of a minor appears in the criminal code and there the federal government used the age of 16. Again, Esquivel-Quintana relied on the model penal code and the same provision applies here, MPC 213.3 specifically. That provision treats sexual intercourse between a guardian and the victim as a misdemeanor so long as the individual is over the age of 16. It's only when the individual is under 16 that it becomes felonious. And then finally, this does relate to the provisions of the INA and the Supreme Court's recognition that sexual abuse of a minor is on the same line as rape and murder and thus it is an egregious and heinous crime. And here, although a terrible crime, it is on par with the statutory rape laws that were in effect in 1996. If there are no further questions on the aggravated felony classification, I would like to turn to the argument as to actual prejudice. In order to dismiss the indictment, Mr. Primadero-Ramirez brought a collateral attack against the 2008 removal order under 1326D. Here, the defendant must show that first, the alien exhausted any administrative remedies  Second, that the deportation proceedings of which the order was issued improperly deprived the alien of the opportunity for judicial review. And third, that the entry of the order was fundamentally unfair. Below, the district court correctly found that Mr. Primadero-Ramirez met the first two prongs of his collateral attack of the removal under 1326D. Issues we have not decided. No, Your Honor, and the government did not raise an argument as to those first two prongs. What is at issue is the fundamental unfairness prong. And here, the court erred when it found that the removal order was not unfair because he suffered no actual prejudice despite these procedural errors. Specifically, the court erred in two ways. First, the court erred when it found that it was unlikely that Primadero-Ramirez was statutorily eligible because the court found that it was unlikely that he would have been able to pay for his departure. However, we provided an uncontested affidavit of his ability to pay and Mr. Primadero-Ramirez was statutorily eligible for voluntary abortion. Supported by what? His virals only? Yes, Your Honor, and his prior work experience in the construction industry. He hadn't worked for two years at the time. No, Your Honor. So, it seems to me we need more this many years later. Your Honor, I would like to highlight the provision that we're talking about is in 1229C-A and in that, discussing the voluntary departure for pre-conclusion. The statute simply requires the language that the alien must depart at his own expense. When we look to 1229C-B, which is the post-conclusion voluntary departure there, the defendant must show by clear and convincing evidence that he has the ability to pay. And so, I think the implication is that under the pre-voluntary, the individual does not have to reach a certain burden of proving their ability to pay. And again, we provided an uncontested affidavit that he does have the ability. Well, there has to be some burden, right? I mean, the judge was saying they wouldn't have granted him voluntary departure because they would have found he's not able to pay and even the first statute you quoted said he can do it at his own expense. Yes, Your Honor. Immigration authorities presumably wouldn't allow someone to be released knowing that they'll never come up with the money to leave and therefore will be at large within our country. Isn't that right? Your Honor, I think that we would be trying to look to, in 2006, the exact financial statement that he would have had at the time of his appearance before an immigration judge. And there, he could have potentially provided the exact amount of dollars that he had and shown that he had the capacity. Additionally, in our briefing to the district court, we stated that the cost was approximately $700. So, it was not an onerous fee that would be required to fund this voluntary departure and it is likely that he could have afforded it. And more so, he did provide an uncontested affidavit that he could afford it. But the second and more interesting issue is this standard of actual prejudice where the Eighth Circuit law is a bit confusing. The district court applied a strict reasonable likelihood analysis. When we read the prevailing standard... You know, that's the law issue. That's what's fun. But the key issue here for me is you don't have a case where speculation about voluntary departure has been held to establish prejudice. Rodriguez, you correctly cite the standard as stated in Rodriguez. Rodriguez never reached the issue. No, Your Honor. What case did? Your Honor, the district court case of Lamona's Valley does in fact reach... Factually, it's a very similar case. And there, the district court does reach the Lamona's Valley, Your Honor. It's a Westlaw site. It's in your brief? Yes, Your Honor. Northern District of Iowa. Yes, Your Honor. And in that case, very similar, the immigration officials determined that the individual had committed an aggravated felony. The district court found that that was an erroneous classification and then proceeded to look to the merits of the case applying the may well have standard. And the reason I highlight that case is the bulk of the cases, the case law surrounding this standard are situations where the alien or the defendant could not have achieved any relief from deportation and thus the procedural due process errors that occurred were essentially harmless because it was impossible for the alien to have prevailed. When in this situation, had the individual had the opportunity to go before an immigration judge, the immigration judge, under its broad discretion, could have granted voluntary departure. And to highlight that broad discretion... What does may well have mean? That's not a standard typically known in the law. No, Your Honor, it is not. I don't know that our court has really adopted that as a legal standard in this context. Why shouldn't we use a more traditional legal standard, whatever the threshold ought to be, instead of creating a new one that doesn't really give you much? It doesn't really mean much. I don't even know how would we apply may well have. I think that we can associate may well have in this reasonable likelihood language with recognizing the discretion that an immigration judge would have had, and that is the test, is would it have been an abuse of discretion by an immigration judge to have granted voluntary departure at the time. That can't be right. You're saying even if it's not reasonably likely that the judge would have granted departure, if a hypothetical judge could have, then he wins. That is what you're arguing now. Your Honor, the argument is that the immigration judge, in fact, has the broad discretion, but is bound by its policies, specifically in re Gamboa, which lays out the positive and negative equities that the immigration judge must weigh when making those determinations. This is a judicially unreviewable decision that we're speculating about, the grant or denial of voluntary departure. So what circuit court case has ever said that you could collaterally attack an order by, after the fact, speculation about a judicially unreviewable decision that the IJ was not asked to make? Your Honor, I do not have a response, quite a case in front of me on that point. See, that to me is a dramatic proposition. Yes, Your Honor, and I would. So you are asking for a new law of a most problematic nature, and nobody talks about that. Your Honor, I would point to, briefly, the case that established the collateral attack for the immigration under 1326, being Mendoza-Lopez, and there the court recognized that there must be a process by which it can be judicially reviewed, even when there is a statutory bar as to the judicial review as to the merits of the case. But the defendant, because it's used as an element in a later conviction, must be able to challenge the underlying removal order. And barring any immediate question. Some things are not subject, effectively, to collateral attack. Yes, Your Honor. Finality still has a big role to play in our system, and some things can't be collaterally attacked. So Mendoza-Lopez established a framework for attacking in many situations, but this one is quite different. Your Honor, Congress adopted the recognition by Mendoza-Lopez that this is a situation in which collateral attack would be appropriate by codifying 1326D and laying out the process by which a defendant can collaterally attack the removal order, and adopting Mendoza-Lopez's language of fundamentally unfair. And there the facts are less egregious than here. In that case, the individual is actually present before an immigration judge, and simply because he could not understand it because the hearing was in a different language, that was fundamentally unfair. In our case, Mr. Pineda-Ramirez was never given the opportunity to be in front of an immigration judge. And I see that I'm out of time. What do we do if we accept your position on these two issues? Your Honor, we would ask that you vacate Mr. Pineda-Ramirez's conviction and remand the case with instructions to dismiss the indictment against him. Why wouldn't we need a hearing at least on whether he could in fact understand English at that time? He'd been 12 years in the country. All we have is his assertion, right? And we have the district court finding, based on the evidence provided, that he did not knowingly and intelligently waive his rights because there is no evidence to show that he was in fact given those rights in the ability to understand them. The underlying documents in the docket at the district court level show that it states that he understood them. The government didn't know at the time and couldn't find Ms. Cope and was confident that she would have provided testimonial support for the N.I. That's correct, Your Honor, and they still have not found him. I know, but they could have gone alternatively. He didn't need the interpreter's advice. Those are possibilities, yes, Your Honor, but we stand by the fact that the government did not raise objections to the findings by the district court and there would be no need for this court to reach those questions. Even if your man could have afforded it, what about Judge Rose's view that it's highly unlikely that an immigration judge would have allowed a felony sex offender who had just been released from prison to depart on his own terms? Your Honor, we believe that that belief is clouded by a misunderstanding of the immigration judge's ability to impose voluntary departure under safeguards. In a situation such as this, the immigration judge would have been empowered to continue to detain. That's doubtful. We're talking about a district judge who was a U.S. attorney. I find it very doubtful that she didn't understand the law. Yes, Your Honor, I misspoke. We have that way of expressing her ruling on this issue. Yes, Your Honor. So we assume she applied the wrong standard? No, Your Honor, I would point to the district court's opinion at ECF 39 on page 10 in the footnote stating that it's unlikely that an individual would have been allowed to, after being required to register as a sex offender, being allowed to travel across the nation. Well, suppose we find that more than plausible.  Now we have to remand with instructions to apply the right standard to what you said in your footnote. Yes, Your Honor. If the court sees that this requires more factual development, however. No, if the wrong legal standard is applied and a decision that may well have been supported by the record had the standard been correct, all we do is remand with instructions to apply the right standard. My understanding, Your Honor, is that on the de novo review, because it is a question of the correct application of the law, this court could apply the law correctly itself without requiring it to be remanded. Okay, so then we confirm. Yes, Your Honor. You could also vacate and remand for, you could vacate the conviction and remand to dismiss the indictment because he may well have been granted voluntary departure recognizing the broad discretion that the immigration judge would have. Well, there's another kind of, we can also remand to the district court with directions to restate the correct standard in your footnote and reconsider the ruling. Yes, Your Honor. I frankly don't see that we could do any more than that, but I understand your position. Thank you, Your Honor. I see that I'm out of time. Thank you. Mr. Faith. Good morning. David Faith, appearing for the United States. Members of the court, I think it bears repeating that the central fact of this case is that the defendant was convicted of a felony sex offense, the elements of which are assuming the position of a parent in the home of a child, defined as less than 18 years of age, and having vaginal intercourse with that child. And this undisputed fact leads into the two questions that both parties agree are the key questions in this case. One, does having vaginal intercourse with a child less than 18 with whom you've assumed the position of a parent constitute sexual abuse of a minor under immigration law? And the second question being, whether it's reasonably likely that someone convicted of that offense would have been granted voluntary departure. If the answer to the first question is yes, then it's not necessary to get to the second question. If it's an aggravated felony, then statutorily he would have been ineligible for relief and therefore unable to show prejudice within the meeting of 8 U.S.C. 1326 D.3. If you get to the second question, I believe the record shows quite clearly that the equities would not have favored discretionary relief, and so again, the defendant would have failed to meet his burden to prove prejudice. So either way, the court should affirm the ruling below. So let's dig a little bit more into the aggravated felony issue. As the defendant correctly pointed out, the Supreme Court in Esquivel, Quintana v. Sessions explicitly declined to decide this issue, though they found that absent some special relationship of trust, consensual sexual conduct, where age is the sole basis of criminality, it was not an aggravated felony if the victim was 16 or 17 years old. But it held, and I quote, we leave for another day whether the generic offense encompasses sexual intercourse involving victims over the age of 16 that is abusive because of the nature of the relationship between the participants. And I think the court's reasoning here is significant because what they did in evaluating what sexual abuse of a minor means is they looked at contemporaneous sources for what that means, because it's not defined in the statute. And they found it significant that the vast majority of states set the age of consent at 16 for statutory rape based solely on the age, but they specifically went on to find, quote, many jurisdictions set a different age of consent for offenses that include an element apart from the age of participants, such as offenses that focus on whether the perpetrator is in some special relationship of trust with the victim. So even though, as you pointed out, there is not a survey in the briefing of the states, we have a specific finding from the Supreme Court that many jurisdictions set a different standard in where a special relationship. Counsel, you think that's enough for us to decide this issue? As Judge Colleton mentioned earlier, there's nothing in the briefs here to help us do that analysis that you're asking us to do. Certainly, I agree that it would have been preferable if that were there, but I think there's enough there between the Supreme Court's finding here and the underlying reasoning of what an aggravated felony is. I don't know what you mean when you say the Supreme Court's finding. I mean, if they knew the answer to the issue or wanted to answer it, they would have said so, but they left it open expressly. So the fact that they made the statement you're quoting doesn't mean they thought it necessarily led to a conclusion. We would have to do the hard work that the briefs don't do to figure out what the lay of the land was at the time. I know you're not on the brief here. Maybe you were a secret author or maybe you were sent up to answer questions about it, but that's the concern. We might get it wrong if we don't have the right data. I certainly understand your point, Your Honor, but I do believe there's another way we can get to the same conclusion, which is looking at the Supreme Court's deeper reasoning of what an aggravated offense is, which they said is, quote, one made worse or more serious by circumstances. And so I think what they were holding there is that the mere fact a victim is 16 or 17 is not a sufficiently aggravating circumstance, but they were, of course, leaving open that there might be additional aggravating factors that would make it an aggravated felony. And I think the non-decision on this issue before us today is significant because it suggests at least implicitly the court found the statute ambiguous as applied to situations where there was a special relationship. And if it's ambiguous, then we can give some deference to the reasoning of the Board of Immigration Appeals in Rodriguez v. Rodriguez, where they, faced with the same problem, looked at a number of federal statutes and found persuasive federal statutes that defined a child as a person under the age of 18. For instance, 18 U.S.C. 3509A, which found that in the context of child witnesses, and 18 U.S.C. 2423A, which deals with the context of transporting a minor for criminal activity. And I think both of these are applicable here because these are cases where there's a special regard for protecting the child because of additional concerning circumstances, such as the child being a witness at a proceeding or the child being transported. And I would submit to you that there being a special relationship is an additional circumstance, which is analogous, that suggests that Rodriguez's reasoning here in applying these statutes makes sense in the context of there being some additional reason for concern for the child, as applied here. Unless the court has further questions on this issue, I'd like to move on to the second issue, which is even if the defendant, even if the crime the defendant committed isn't technically an aggravated felony, it still, as defendant, has conceded a very serious crime. It's a felony that he was serving, still serving, a multi-year sentence for. And I think it's very significant here that the defendant has not cited a single case where discretionary relief was granted to a defendant that had committed so serious a crime so recently. Was there discovery in this case in the district court? I do not believe so, Your Honor. I don't understand why the government didn't challenge or at least explore the don't understand English issue. Well, the government did challenge that below, but based on the record actually before us, in the motion to dismiss, the government argued the administrative exhaustion and appeal issue. But based on the record below, decided not to contest those on appeal. But you didn't contest the factual underpinning of the collateral attack. I believe that every effort was made to... Seems to me that was a serious blunder. I understand. But fortunately, I don't think that it's necessary to resolve that question, because on the prejudice issue, it's clear that the defendant hasn't met their burden here. Now, there was some discussion about the terminology, whether it's reasonably likely, or I don't know if the defendant talked about this, may well have resulted language. And also talked about the Ninth Circuit's plausible standard. But I think the one area where the defendant and the government agree is that the label is less important than what the courts that have looked at this have actually done, the kind of substantive review they've done. Now, there's really no Eighth Circuit case that's completely on all fours with this. So I believe Your Honor is correct that it's not really even established whether, in the Eighth Circuit, this is justiciable. There are some cases cited in the record in the Ninth Circuit that get into this. And I think what the courts are doing there, if you look at it, is they're weighing the equities. They're looking at the positive and negative equities. They're looking at the underlying specific facts of the case. Is it District Court or Circuit Court? Ninth Circuit Court of Appeals. On the voluntary departure, or now we talk on the standard of review generally? On voluntary departure in the context where the defendant was claiming that they would have plausibly been entitled to relief. And the seminal case in the Ninth Circuit... Counsel, what's a Ninth Circuit case that discusses that with a voluntary departure? Counsel gave us Northern District of Iowa. Valdez-Nevoa appears to be the main case in the Ninth Circuit, 780 F. 3rd 906. And I think it's significant there that even under the supposedly lesser plausibility standard, the Ninth Circuit said we expressly reject the contention that relief is plausible whenever an I.J. could have granted relief at issue without abusing his discretion. Such a standard is akin to showing mere possibility or conceivability, which we've plainly held as insufficient to satisfy the standard. And then what that court went on to do was actually weigh the positive and negative equities. They dug into the facts in the record. They found that the negative equities where the defendant had recently been convicted of a couple of assaults and some drunk driving, and they weighed that against positive equities, what they called compelling positive equities, that he'd been brought to the U.S. as a child, that he had eight siblings who were citizens or residents. Yet despite that, they still found that the negative equities outweighed the positive and finding no recent cases where an immigration judge had granted voluntary departure where the criminal record as recent and serious as that existed, they concluded that it was not plausible under their standard that relief would have been granted. There's also a helpful review of immigration cases in that decision, as well as in another Ninth Circuit case, Rojas-Pedroza, 716 F. 3rd, 1253. And if you, I won't summarize them all here, but the pattern that emerges is cases where the Ninth Circuit found it plausible that relief would be granted were where the crimes were relatively less serious, less recent, and the positive equities were very compelling. And that's just not the factual case in front of us today. If you look at the actual facts in front of us today, we have a recent… Now just let me stop you. It's not explained in your brief. Was the discretionary relief available in those Ninth Circuit cases? Would it have been ultimately judicially reviewable? Like adjustment of status. Well, it appears that in the Ninth Circuit they judicially reviewed it. That obviously doesn't bind this court to that decision. Were these voluntary departure cases, if I have to say it more explicitly? Yes, the defendant was asserting they would have been entitled to voluntary departure. As opposed to some other kind of discretionary relief. I believe so, Your Honor. So again, looking at the equities of this particular case, you have, even if it's not technically an aggravated felony, a very serious, very recent offense, an offense so recent that he was still incarcerated for it, and weighed against that are not very compelling positive equities. Basically just that he'd lived in the U.S. for a while before committing his serious felony. Given that fact, and the fact that the defendant has cited no case where an immigration judge has granted relief in similar circumstances, the defendant has not met their burden of proving prejudice, and therefore, regardless of your finding on the aggravated felony, you should uphold Judge Rose's decision, at the very least, on the basis that she reached the decision. Unless the court has any further questions for me, I will sit down. Thank you. Mr. Harris, do you have some time? He does not, Your Honor. Well, I think we understand the issues. The case has been well briefed and argued. Mr. Harris did an excellent job. We hope to see you again in the future. Take the case under advice.